**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 5:17-po-00384 JLT |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO DISMISS |
| v. | (Doc. 6) |
| RICHARD ASHLEY, | |
| Defendants. | |

The government asserts that a woman complained about an incident that occurred on April 5, 2017, while she was a visitor at Death Valley National Park. (Doc. 1-2) She reported that she asked another visitor, later identified as Richard Ashley, not to fly his drone. Id. In response, he flew the drone "at her" and then landed it and picked up a camera and took pictures of the woman, her family and her vehicle while stating that he "would find out where they lived." Id. When interviewed about the incident, the defendant admitted that he "was involved in a verbal altercation" though he said it was with a man and that "the boy who looked to be '12 years old' wanted to fight." Id. Based upon this statement of probable cause[1], the government cited Mr. Ashley with a violation of 36 CFR § 2.34(a)(2).

Mr. Ashley contends that the statement of probable cause fails to support that the violation

---
[1] To evaluate whether there is probable cause to support the citation, the Court declines to consider any information not contained in the statement of probable cause.

1

occurred and that the government is infringing on his First Amendment rights. The Court disagrees and **DENIES** the motion.

I. **Analysis**

In his motion, Mr. Ashley asserts that the words attributed to him do not constitute a "true threat," such that there is not probable cause to support the citation. (Doc. 6 at 2-3) In short, Mr. Ashley argues that what he meant to do if he found out where the family lived was not indicated and, therefore, cannot constitute a true threat. Id. at 3. Consequently, he argues that the First Amendment protects his speech. Id. at 4.

On its face, it appears the citation asserts that the statements Mr. Ashley made and his act of flying the drone "at" the victim[2] violated 36 C.F.R. § 2.34(a)(2). This regulations reads,

> (a) A person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person commits any of the following prohibited acts:
>
> [¶]
>
> (2) Uses language, an utterance, or gesture, or engages in a display or act that is obscene, physically threatening or menacing, or done in a manner that is likely to inflict injury or incite an immediate breach of the peace.

A "true threat" is made when "a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." United States v. Cassel, 408 F.3d 622, 631 (9th Cir.2005). Speech that causes a "reasonable person [to] foresee that the listener will believe that he will be subjected to physical violence upon his person, is unprotected by the First Amendment." United States v. Orozco–Santillan, 903 F.2d 1262, 1265–1266 (9th Cir.1990), overruled on other grounds as recognized in United States v. Hanna, 293 F.3d 1080 (9th Cir.2002). Thus, whether speech constitutes a true threat is "governed by an objective standard-whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm . . ." Roy v. United States, 416 F.2d 874, 878 (9th Cir.1969). The speaker need not intend to carry out any

---

[2] The defendant does not challenge that there is probable cause to support the citation related to his act of flying the drone "at" the victim as an act that is "physically threatening or menacing."

unlawful conduct; rather, all that is needed is that the speaker intend to threaten his victim. Id.; United States v. Keyser, 704 F.3d 631, 638 (9th Cir. 2012).

Moreover, in Roy, the defendant argued that his statement that he was going to "get" the President could mean, "to become even with" or to "gain an advantage over." Roy, at 878, n. 6. In rejecting these interpretations, the Court considered the circumstances of the statement and determined, "[W]hen stated in the context of an anonymous telephone call from a Marine base, the words 'to get the President' would seem to mean 'to take the life of or to inflict bodily harm upon the President.'" Id. Thus, Roy demonstrates that the Court should consider the words uttered in context to determine whether they would be reasonably understood to communicate a threat.

In this case, the statement of probable cause indicates that after the victim asked him to stop flying the drone, the defendant flew the drone at her, then picked up his camera and began taking photos of the victim, her family and her vehicle. While doing so the victim reported that Mr. Ashley said that he was "going to find out where they lived." The question, therefore, is not whether the defendant had the ability or intention to locate the victim's address or, even, whether the exact meaning of the statement could be discerned. Rather, the question is whether the statement attributed to the defendant was likely to incite an immediate breach of the peace. The Court cannot say that as a matter of law, such a response was unlikely. Indeed, the inference to be drawn from the statement of probable cause is that a boy *did* display himself in a way that made Mr. Ashley believe that the boy wanted to fight and that he engaged in a verbal altercation with a man. Since the reporting victim was a woman, it appears that these other individuals were incited.

Likewise, when considered in context, the Court cannot conclude as a matter of law that the conduct described by the statement of probable cause (the defendant flying the drone at the victim, then taking pictures and making the statement at issue) would not cause a reasonable person to believe that the statement was a serious expression of an intent to harm the victim and/or her family. Thus, the Court cannot conclude the statement does not constitute a true threat (Cassel, at 631). For the same reasons, the Court cannot conclude that there is not probable cause to support that Mr. Ashley did not intend to threaten the victim. Consequently, the Court does not conclude that the statement is protected by the First Amendment.

3

The defendant relies heavily on United States v. Poocha, 259 F.3d 1077, 1078-1079 (9th Cir. 2001). In Poocha, the defendant yelled "Fuck you," "Fuck this," or "This is fucked," when the ranger told him to leave the area. While doing so, he puffed out his chest and clenched his fists. Id. at 1079. In reversing his conviction under 36 C.F.R. § 2.34(a)(2), the Ninth Circuit noted that the fighting words doctrine, when the speech is directed at a law enforcement officer, imposes a heightened standard because citizens must be permitted to voice disapproval of the actions of government officials even when the speech may be otherwise criminal if directed at a private citizen. Id. at 1082. Thus, even though a private citizen may be provoked by another person yelling, "Fuck you" at him/her, a law enforcement officer is not permitted to be so.

Even still, the statements attributed to Poocha could not possibly be construed as a true threat. Rather, it was the fact that he made the statements—which indicated his obvious upset—coupled with the body language that caused the officers concern. However, no matter which of the statements he actually uttered, none indicate explicitly or implicitly an intent to place the listener in fear of harm. Rather, the statements, at most, were a juvenile and low-class expression of Poocha's disagreement with the orders of the officers. Indeed, had Mr. Ashley merely yelled these words at the victim, clearly no criminal charge could be brought. However, the statement he is claimed to have uttered need not explicitly inform the victim what he intended to do once he located the family's home and, it appears that it may have been all the more ominous because it did not.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. The motion to dismiss is **DENIED**.

IT IS SO ORDERED.

Dated: **March 15, 2018**          /s/ Jennifer L. Thurston
                                   UNITED STATES MAGISTRATE JUDGE

4